## DEPARTMENT OF TREASURY *v*. CITY OF LINTON

[No. 28,078.   Filed May 14, 1945.]

364

*James A. Emmert,* Attorney General, and *John J. McShane* and *Winslow Van Horne,* Deputy Attorneys General, for appellant.

*Ross, McCord, Ice & Miller,* of Indianapolis, for appellee.

YOUNG, J.—In 1933, the Legislature of Indiana passed a gross income tax law. This act levied a tax upon the entire gross income of every "person" engaged in any business or activity, with certain exceptions not material in this case, and it defined the term "person," when used in the act, to include any municipal corporation. Acts of 1933, ch. 50, § 1 (a), p. 389.

In 1937, the act was amended to change the definition of the term "person" as follows:

"When used in this act, the term 'person' . . . , means and includes any . . . municipal corporation

or any other political subdivision of the state engaged in private or proprietary activities or business. . . ." § 64-2601, Burns' 1933.

In 1937, 1938, 1939 and 1940, the City of Linton, appellee herein, owned and operated water, gas and electric utilities. It purchased from private corporations the gas and electricity which it sold and distributed same through and over distribution systems owned by it. Beginning with the second quarter of 1937, and ending with the second quarter of 1940, the city reported its income from its sales of water, gas and electricity to its citizens and paid gross income tax thereon. Thereafter the city filed its petition for refund of the gross income taxes so paid in the manner provided by statute (§ 64-2614, Burns' 1943 Replacement). Refund was denied and this suit was brought by the city to recover the amount of such taxes.

The case was presented on a stipulation of facts and the court found for the plaintiff and rendered judgment accordingly, from which this appeal is prosecuted. The sole question before the court is whether or not the income of the city, derived from its operation of three utilities owned by it, constituted income from a private or proprietary activity or business within the meaning of the 1937 amendment of the Gross Income Tax Law.

In Indiana it has long been recognized that the operation of public utilities by a municipality for service to its inhabitants constitutes a proprietary and not a governmental activity. *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 146, 147, 78 N. E. 657; *City of Richmond* v. *Lincoln* (1906), 167 Ind. 468, 469, 470, 79 N. E. 445; *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 532, 177 N. E. 249; *City of Huntington* v. *Northern Ind. Power Co.* (1937), 211 Ind. 502, 514, 520, 5 N. E. (2d) 889, 6 N. E. (2d) 335; *Pub-*

*lic Service Co. of Ind.* v. *City of Newcastle* (1937), 212 Ind. 229, 237, 8 N. E. (2d) 821; *Borgman, Treasurer* v. *City of Fort Wayne* (1939), 215 Ind. 201, 206, 18 N. E. (2d) 762; *Chadwick, Treasurer* v. *City of Crawfordsville* (1940), 216 Ind. 399, 412, 413, 24 N. E. (2d) 937.

As an illustration of how clearly and forcibly this court has stated the rule, we refer to the case of *City of Logansport* v. *Public Service Comm., supra,* where the following language is used at pages 531-2:

> "A city in the operation of an electric light utility, selling service to the public, acts in its private business capacity and not in its public governmental capacity . . . When a municipal corporation engages in an activity of a business nature rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad, which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity (citing authorities), and a city operates its municipally owned utility plant in its proprietary capacity as a private enterprise subject to the same liabilities, limitations and regulations as any other public utility (citing authorities)."

And in the case of *City of Huntington* v. *Northern Ind. Power Co., supra,* this court used the following conclusive language at page 520:

> "If it (City of Huntington) engaged in supplying electric current for domestic and commercial purposes, it was then acting in a private business capacity and not exercising what it claims was its inherent governmental power."

This line of cases above referred to existed when the 1937 amendment to the income tax law was being considered and was enacted by the legislature, and under a well established rule of statutory construction when a legislature uses language which

has been given judicial interpretation, it will be presumed that the legislature intended the words to have the meaning given them by the court. 50 Am. Jur. 314, and many cases cited in note 5. The legislature made cities engaged in private or proprietary activities subject to gross income tax at a time when the courts had said that the operation of utilities by cities for service to the public was in its private and proprietary capacity. It follows that the legislature intended to tax the city's income from such activity.

We hold, therefore, that the operation of water, electric and gas utilities by appellee with service to its citizens, is a private and proprietary activity and business and income therefrom was properly taxable under the 1937 amendment to the Indiana Gross Income Tax Law.

Appellee's counsel contend that a municipal corporation in Indiana has no power to engage in a private business, except as incidental to some public activity. They argue that appellee's activity in distributing water, gas and electricity to its people is an exercise of the police power. They point out that in serving its people with utility service appellee may exercise the right of eminent domain, and that it may exercise the taxing power in furtherance of the utility activities involved. They argue that the police power, the taxing power and the right of eminent domain may be exercised only for public uses and purposes. They also point out that the properties involved are exempt from real and personal property taxes under the statutes of the State of Indiana and say that in Indiana only property devoted to public purposes may be so exempt under the Constitution. Because of all these things, they argue that distribution of gas, electricity and water by appellee to its people is a

public activity and not a private or proprietary activity within the language of the statute involved.

We think appellee gives too narrow a definition to the word "public." Anomalous as it may seem, we think that an activity of a municipality may be public in one sense and still be private or proprietary within the meaning of the statute here involved.

Every municipal activity is in a sense public. It is public *because* it is municipal. The word "municipal" connotes a public interest or character. These ██ utilities are public in that they are operated by a governmental unit and in that everyone is entitled to service upon the same basis as everyone else. Yet the long line of Indiana cases which we have cited, holds that a municipality operates its utility property in a private or proprietary capacity. And in the case of *Chadwick, Treasurer* v. *City of Crawfordsville, supra,* this court definitely recognizes that the relation of a municipality to its utility properties is public in one sense and private and proprietary in another. We quote the following from page 413:

> "In respect to their public utility properties the rights and duties of a municipality are generally measured by the same rules and the same standards which apply to private individuals or private corporations, and this has led to the repeated statement that they hold their public utility properties in a private or proprietary capacity. But the same courts that use such language uniformly hold that, in the operation of such properties, the municipalities perform a public function under the police power, and not a private function."

It may be true that the police power and the power of eminent domain and the taxing power may be exer-

cised only for public uses but it does not follow that such use is not in the exercise of a private and proprietary function or activity. The police power may be exercised in behalf of purely private corporations which are being conducted for the profit of private individual stockholders. Under our statutes many privately owned utility corporations have the right of eminent domain. They may take private property by condemnation without the consent of the owner. They can do this because the use they will make of the property is a public use, but at the same time, no one will deny the operation of the utility is private and proprietary. So it follows that a use, whether by a municipal corporation or a ˘ private corporation, may be public in one sense and still be private and proprietary in another sense, and the police power and the right of eminent domain are not conclusive tests. Likewise the power of taxation has been exercised in behalf of private corporations. These private corporations were engaged in private and proprietary activities, but they were so affected with the public interest that their activities could be considered public in another sense and they could be the beneficiaries of subsidies raised by taxation. *Bullock* v. *Billheimer* (1910), 175 Ind. 428, 94 N. E. 763.

The fact that the property devoted to utility service in Linton is not subject to real estate and property tax is not significant in our opinion. The Indiana Constitution (Article 10, Section 1) provides that property used for *municipal* purposes may be exempted by law. The furnishing of utility service to its inhabitants by appellee is a municipal purpose, in that municipalities are authorized by statute to carry on such activity. In 1939, the legislature saw fit to exempt certain municipal property, including "waterworks, elec-

tric utility, gas and heating plants," from property taxes (Acts of 1939, ch. 15, p. 24). That is the reason the utility properties here involved are free from property taxes. It is significant in this connection to note that this act of the legislature specifically provided "that this act shall not exempt any city or town from the requirement to pay the tax upon its gross receipts under the Gross Income Tax Law."

It is said in appellee's brief that it is "absurd" and "economic nonsense" for one unit of government to tax another unit of government, and counsel argue that this should be taken into account in determining the intent of the legislature. The propriety and wisdom of the legislation here involved was for the legislature and not for the courts and its motives are not material. However, answering appellee's argument, we suggest that the legislature may have thought that the current trend of government into fields ordinarily occupied by private enterprise needed curbing, or that the tax advantage of government in proprietary business was unfair and needed equalizing. Or it may have considered that the tax here involved was not "taking money out of one pocket and putting it into another," in view of the fact that gross income taxes go into the state treasury and not into the treasury of the community from which the particular money tax flows, and the recipients, upon distribution, are the people of the state as a whole and not the people of the community who paid the tax.

Appellee also relies largely upon the proposition that the case of *Chadwick, Treasurer* v. *City of Crawfordsville, supra,* overrules the line of earlier cases holding that the operation of utility property by municipalities constitute a private or proprietary activity or business. With this we cannot agree. In the

first place, if the opinion in the Chadwick case overrules the earlier cases it is only by implication, and opinions will not be impliedly overruled unless the overruling opinion is so inconsistent with the earlier opinion that both cannot stand together. If it is possible to reconcile opinions that must be done rather than to imply that one overrules another. If the Chadwick case could be said to be irreconcilable with the earlier cases upon the subject matter before us, we would be disposed to adhere to the earlier cases.

But we do not think that the Chadwick opinion is irreconcilable with the earlier cases or with the conclusion reached by us in this case. The Chadwick case was an action by the City of Crawfordsville to enjoin taxation of utility property devoted in part to the distribution and sale of electricity for use by its citizens. A statute passed in 1939 had exempted such property from all taxes except gross income tax. Chadwick, as City Treasurer, claimed that the act of the legislature contravened Section 1, of Article 10, of the Constitution of Indiana, which section required the General Assembly to provide for a uniform and equal rate of assessment and taxation, but the Constitution excepts from such provision such property used for municipal purposes as may be specially exempted by law. In other words, the Constitution gave the General Assembly the right to exempt from taxation property used for municipal purposes, and the sole question involved was whether the utility property was used for municipal purposes. In the opinion, this court stated that the operation of an electric plant by a city for its own use, and the use of its inhabitants, is an exercise of the police power and "is a governmental purpose that is served under a power generally vested in cities and towns, and therefore a municipal purpose," from which it concluded that the exemp-

tion of the property from taxation was constitutional. However, in the course of the opinion (pp. 412, 413) it is clearly stated that in certain respects a city may act in a private or proprietary capacity, and definite reference is made, without denial, to the rule that cities have the same rights and duties in respect to their utilities that private corporations have and that they hold their utility properties in a private or proprietary capacity.

It seems clear to us that the Chadwick case does not overrule the line of cases to which we have called attention earlier in this opinion.

The judgment is reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 60 N. E. (2d) 948.