**CITY OF ANDERSON, Appellant (Plaintiff Below),**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, State of Indiana, Appellee (Defendant Below).**

**No. 2–1078A344.**

Court of Appeals of Indiana, Second District.

June 30, 1980.

"City of Anderson Electric Department, 1973, $19,322.06.

City of Anderson Electric Department, 1974, $51,879.97.

City of Anderson Electric Department, January 1, 1975 through October 31, 1975, $18,967.18.

City of Anderson Water Department, 1973, $4,969.64.

City of Anderson Water Department, 1974, $9,231.38.

City of Anderson Water Department, January 1, 1975, through October 31, 1975, $5,480.47."

Six months elapsed from the date of filing the claim without Department acting upon it. Such inaction constituted rejection of the claim and, pursuant to IC 6–2–1–19 (Burns Code Ed.), City brought suit in Madison Circuit Court on July 1, 1976. The Circuit Court entered judgment against City and City appeals that judgment. We affirm.

Paul Hirsch, Indianapolis, Charles F. Braddock, City Atty., Anderson, for appellant.

Theo. L. Sendak, Atty. Gen., Wallace T. Gray, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Appellant City of Anderson (City) appeals from an adverse judgment by the trial court raising the following issue:

Were purchases made during the years 1973 to 1975 for City-owned electrical and water utilities exempt from State gross retail tax and use tax? [1]

These facts are pertinent to the appeal. City is a municipal corporation that owns and operates electric and water utilities. December 19, 1975 it filed a claim for refund with the Indiana Department of State Revenue (Department) for sales and use taxes paid on purchases made for the water and electric utilities. Exhibits attached to the refund claim list individual payments to suppliers, but do not specify the types of items purchased or their purpose. City also lists by year the total amount of refund claimed.

City contends purchases for municipal utilities fall within the exemption provision of the State gross retail tax and use tax found in IC 6–2–1–39(b)(5) (Burns Code Ed.) [Subsection 5]:

"(b) Nor shall the state gross retail tax apply to any of the following transactions.

\*      \*      \*      \*      \*      \*

"(5) Sales to the State of Indiana, its agencies and instrumentalities, all counties, townships and *municipal corporations*, their respective agencies and instrumentalities, and all other state governmental entities and subdivisions of tangible personal property and public utility services and commodities predominantly for use in the performance of *governmental functions*." (emphasis added).

Admittedly, City is a municipal corporation; however, provision of electric and water services is not a "governmental function" and, therefore, the purchases were not exempt under Subsection (5). In *Department*

---

1. IC 6–2–1–37 through 6–2–1–53 (Burns Code Ed.).

*of Treasury v. City of Linton*, (1945) 223 Ind. 363, 60 N.E.2d 948, as followed in *Gross Income Tax Division of Ind. Dept. of St. Rev. v. City of Goshen*, (1969) 145 Ind.App. 652, 252 N.E.2d 259, the Court held the city acted in a private, as opposed to a governmental, capacity in owning and operating a utility.[2] Quoting from the case, 223 Ind., at 366, 367, 60 N.E.2d at 949, 950:

"In Indiana it has long been recognized that the operation of public utilities by a municipality for service to its inhabitants constitutes a proprietary and not a governmental activity. *Aiken v. City of Columbus*, 1906, 167 Ind. 139, 146, 147, 78 N.E. 657, 12 L.R.A.,N.S., 416; *City of Richmond v. Lincoln*, 1906, 167 Ind. 468, 469, 470, 79 N.E. 445; *City of Logansport v. Public Service Commission*, 1931, 202 Ind. 523, 532, 177 N.E. 249, 76 A.L.R. 838; *City of Huntington v. Northern Indiana Power Company*, 1937, 211 Ind. 502, 514, 520, 5 N.E.2d 889, 6 N.E.2d 335; *Public Service Company v. City of Newcastle*, 1937, 212 Ind. 229, 237, 8 N.E.2d 821; *Borgman v. City of Fort Wayne*, 1939, 215 Ind. 201, 206, 18 N.E.2d 762; *Chadwick v. City of Crawfordsville*, 1940, 216 Ind. 399, 412, 413, 24 N.E.2d 937, 129 A.L.R. 469.

"As an illustration of how clearly and forcibly this court has stated the rule, we refer to the case of *City of Logansport v. Public Service Commission*, supra, where the following language is used at page

531, 532 of 202 Ind., at page 252 of 177 N.E., 76 A.L.R. 838:

'A city in the operation of an electric light utility, selling service to the public, acts in its private business capacity and not in its public governmental capacity. * * * When a municipal corporation engages in an activity of a business nature rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad, which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity (citing authorities), and a city operates its municipally owned utility plant in its proprietary capacity as a private enterprise subject to the same liabilities, limitations and regulations as any other public utility (citing authorities).'"

Therefore, City's further argument that Department's decision to tax utilities' purchases beginning in 1973 was based on a new interpretation of the "municipal corporation exemption" in Subsection (5) is erroneous. However, it is erroneous not because Subsection (5) is inapplicable to the subject purchases (in which case City would argue a policy change in 1973 because purchases were always non-exempt under Subsection [5]), but because the legislature specifically addressed purchases by municipal utilities in other sections of the statute. An examination of legislative history as it relates to these exemption provisions is necessary.

**2.** City wrongly relies on property tax legislation and the Court's holding in *State v. Indianapolis Airport Authority*, (1977) Ind.App., 362 N.E.2d 200 to support a contrary determination. Property tax legislation is not "significant" to the proprietary/governmental distinction utilized in income and sales taxation. *Department of Treasury v. City of Linton*, (1945) 223 Ind. 363, 370, 60 N.E.2d 948, 951; *Gross Income Tax Division of Ind. Dept. of St. Rev. v. City of Goshen*, (1969) 145 Ind.App. 652, 661, 252 N.E.2d 259, 265. While the property tax statute, IC 6–1–13–19 (Burns Code Ed.), repealed 1975, relied on in *Department of Treasury, supra*, and *Gross Income Tax Division of Ind. Dept. of St. Rev., supra*, contained a proviso that municipal property tax exemptions should not affect payment of gross income taxes, and this proviso was not reiterated in the new property tax exemption statute, IC 6–1.1–

10–5 (Burns Code Ed.), we do not find that the deletion of the proviso expressed an intent that property tax legislation should affect or determine sales and income taxation. Further, the property tax exemption is not relevant since it does not deal with the governmental/proprietary distinction. IC 6–1.1–10–5.

City also errs in relying on *State v. Indianapolis Airport Authority, supra*, since the holding therein was based on enabling legislation specifically providing that the airport authority is a "governmental function." IC 19–6–2–30 (Burns Code Ed.). The legislation enabling municipal corporations to own and operate public utilities does not so provide. IC 18–1–21–1 (Burns Code Ed.). This distinction, however, is not to suggest that enabling legislation is determinative of the governmental/proprietary issue.

Prior to 1973 the state gross retail tax and use tax included an exemption for public utilities, IC 6–2–1–39(b)(6) [Subsection (6)], which was separate and distinct from the "municipal corporation exemption" in Subsection (5). Subsection (6) exempted the following from sales and use taxes:

"(6) Sales of manufacturing machinery, tools and equipment to be directly used by the purchaser in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining or finishing of tangible personal property; *sales of all tangible personal property to those public utilities described in subsection (c), (d) and (e) of section 37*; sales of agricultural machinery, tools and equipment to be directly used by the purchaser in the direct production, extraction, harvesting or processing of agricultural commodities; and sales of tangible personal property to be directly used by the purchaser in the direct production or manufacture of any such manufacturing or agricultural machinery, tools, and equipment." (emphasis added).

The public utilities identified in Subsection (6) as "subsection (c) of section 37" utilities are found in IC 6–2–1–38(c) (Burns Code Ed.), which reads in part:

"*every person* engaged as a public utility in furnishing or selling electrical energy, natural or artificial gas or mixtures thereof, water or steam, or steam heating served to consumers for domestic or commercial consumption." (emphasis added).

The key word is "person." The definition section IC 6–2–1–1 (Burns Code Ed.), defines "person":

"When used in this Act [6–2–1–1—6–2–1–53] the term 'person' . . . means and includes any . . . municipal corporation or any other political subdivision of the State engaged in *private or proprietary activities or business* . . ." (emphasis added).

A municipal utility is a "person" within the meaning of IC 6–2–1–1 because, as discussed *supra*, the operation of a public utility is a proprietary activity. *Department of Treasury v. City of Linton, supra*, as followed *Gross Income Tax Division of Ind. Dept. of St. Rev. v. City of Goshen, supra*.[3]

The 1973 amendment, Acts 1973, P.L. 47 § 3, p. 211, deleted the reference to public utilities in Subsection (6) ("sales of all tangible personal property to those public utilities described in Subsections (c), (d), and (e) of Section 37")[4] and replaced it with Subsections (16) and (18), which read:[5]

"(b) Nor shall the state gross retail tax apply to any of the following transactions.

\* \* \* \* \* \*

"(16) Sales to those utilities described in subsection (c) of section 37 which furnish or sell electrical energy and/or steam or steam heating service of tangible personal property to be directly used by such utilities in the direct production of electrical energy and/or steam or steam heating service. The term 'direct use in direct production' as used in this clause shall mean and apply to tangible personal property constituting production

---

3. *Department of Treasury v. City of Linton* (1945) 223 Ind. 363, 60 N.E.2d 948, and *Gross Income Tax Division of Ind. Dept. of St. Rev. v. City of Goshen* (1969) 145 Ind.App. 652, 252 N.E.2d 259, are both gross income tax cases. However, since the income and sales taxes share the same definition section, IC 6–2–1–1 (Burns Code Ed.), a determination that a municipal corporation is a "person" for purposes of income taxation is conclusive as to its status for sales tax, there being no provision to the contrary. Therefore, prior to 1973, all purchases by a municipal utility were exempt from the sales and use tax under IC 6–2–1–39(b)(6) (Burns Code Ed.).

4. Current tax regulation, Ind.Admin.Rules & Regs. (6–2–1–39)–18 (Burns Code Ed.) does not reflect this amendment. The inconsistency is apparently explainable on the grounds that the Department of State Revenue has not modified its regulations to express current legislation. Indiana Tax Reporter (C.C.H.) ¶ 60–241(c), ¶ 60–249(a), (c).

5. We cite from Acts 1973, P.L. 47 § 3, p. 214, 215 which differs slightly from IC 6–2–1–39(b)(16) and (18) (Burns Code Ed.) in its reference to subsection (C) of Section 37 as the relevant description and in using the January 1, 1973 Uniform Systems of Accounts.

plant and power production expenses as classified pursuant to the Uniform System of Accounts for such utilities as adopted and prescribed by the Public Service Commission of Indiana and in effect as of January 1, 1973."

"(18) Sales to those public utilities described in subsection (c) of section 37 which furnish or sell water of tangible personal property to be directly used by such utilities in the direct production of water. The term 'direct use in direct production' as used in this clause shall mean and apply to tangible personal property constituting source of supply plant and expenses, pumping plant and expenses and water treatment plant and expenses as classified pursuant to the Uniform System of Accounts for such utilities as adopted and prescribed by the Public Service Commission of Indiana and in effect as of January 1, 1973."

The 1973 Amendment changes the utility exemption, replacing the previous total exemption with the limited exemption found in Subsections (16) and (18). Therefore, City's argument that Department's decision to tax utility's purchases beginning in 1973 was based on a new interpretation of the "municipal corporation exemption" in Subsection (5) is incorrect. Instead, Department's action was based on the replacement of the public utilities exemption in Subsection (6) with the more restrictive "direct use in direct production exemption" in Subsections (16) and (18).

We acknowledge that the 1978 Amendment, Acts 1978, P.L. 40 § 27, p. 837, to the state gross retail tax and use tax has changed the exemption status of municipal utilities by adding Subsection (27) to IC 6–2–1–39(b), effective July 1, 1978:

"(b) Nor shall the state gross retail tax apply to any of the following transactions.

    \*    \*    \*    \*    \*    \*

"(27) Notwithstanding clauses (16), (17), (18), and (19) or this subsection, sales of all tangible property to municipally owned public utilities."

City contends that the legislature enacted Subsection (27) to counter Department's incorrect interpretation of Subsection (5) as excluding purchases of municipal utilities from its ambit. We do not find, however, that Subsection (27) was adopted for the purpose of reflecting in writing a long-standing policy to exempt municipal utilities from this tax burden. Instead, the legislative history reveals swings in its tax policy over the past years: pre-1973 exempting private and municipal utilities; 1973–1977 exempting private and municipal utilities from purchases used directly in direct production; and July, 1978 to present exempting municipal utilities. The enactment of Subsection (27), therefore, does not affect our result.

■ City, as a taxpayer claiming an exemption, has the burden of showing by sufficient evidence that it is within the "exact letter of the law." *Indiana Dept. of St. Rev., Sales Tax Division v. RCA Corp.*, (1974) 160 Ind.App. 55, 62, 310 N.E.2d 96, 101. Pursuant to IC 6–2–1–39(b)(16) and (18), City must demonstrate that its purchases were of tangible personal property to be directly used in the direct production of electricity and water as classified in the Uniform System of Accounts prescribed by the Public Service Commission. Nowhere does City disclose the types of items purchased or their purpose, as is necessary to satisfy the "direct use in direct production" test. Therefore, City has not carried its burden and we conclude that City's claim for refund was properly denied by the trial court.

Trial court affirmed.

SULLIVAN, J., concurs.

MILLER, P. J., sitting by designation, concurs.